IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 11–cv–01096–WJM–KMT

KATHLEEN SEABRON,
ROBERT LAYS,
CARLA LAYS,
KRISTY LARSON, and
VALERIE JENKINS, individually, and as class representatives of behalf of all others similarly situated,

    Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, and
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN,

    Defendants.

## ORDER

This matter is before the court on Defendants American Family Mutual Insurance Company adnd American Standard Insurance Company of Wisconsin's (collectively "American Family) assertion that deponent Plaintiff Carla Lays has waived her attorney-client privilege with respect to certain information sought during her recent deposition. Defendants filed "Defendants' Bench Brief on At-Issue Waiver of Attorney-Client Privilege" ("Deft.Br.") [Doc. No. 102, filed November 17, 2011.]. Plaintiffs immediately responded with "Plaintiffs' Response to Defendants' Bench Brief on At-Issue Waiver of Attorney-Client Privilege" [Doc. No. 106, filed November 17, 2011]. The deposition of Carla Lays was continued until December

8, 2011 to allow the court to rule on this issue with respect to the otherwise privileged information.

Carla Lays asserts that she suffered emotional distress and other harms based on certain practices employed during the claims procedure with American Family and from undue delay in the process of negotiating her claim for uninsured/under insured motorist ("UM/U'S") automobile insurance coverage. To the extent Ms. Lays asserts harms stemming from communications from American Family, Defendants assert that American Family had no direct communication with Ms. Lays during the claims process and therefore any facts Ms. Lays personally learned about regarding American Family's communications with her attorney came from or through her attorney. Additionally, to the extent Ms. Lays claims harm from alleged delays in the negotiation process, she would have had to receive those facts through her counsel as well. Defendants argue that because the claims Ms. Lays has asserted in this lawsuit put the communications between Ms. Lays and her counsel at issue, she has impliedly waived the attorney-client privilege for communications related to those claims and the facts learned from her attorney.

Defendants draw the court's attention to Ms. Lays' claims wherein she asserts she was "emotionally harmed by text in a letter from American Family to Ms. Lays' counsel that Ms. Lays' counsel characterize[d] as meaning that American Family intended not to pay the appropriate amount on her claim as a result of the cost of independent medical examinations."

Deft.Br. at 4.[1] [2] The Sept. 16, 2010 Letter from which Defendants extrapolate was addressed to Ms. Lays' counsel. American Family asserts it never communicated directly with Ms. Lays about the Sept. 16, 2010 Letter itself or the contents of the letter. *Id.* Defendants assert further that "within a few weeks after sending that letter, American Family sent a second letter clarifying that it did not intend to off-set the cost of the examinations against the amount that would be paid on her claim." *Id.*; Oct. 12, 2010 Letter.

With respect to these two communications American Family argues: (1) the need for information which might otherwise be subject to the attorney-client privilege is the direct result of Ms. Lays affirmative act of asserting claims for emotional distress and other harms arising from communications that had to have occurred between herself and her own counsel (Deft.Br. at 4.); (2) that by asserting those claims, Ms. Lays made the communications between herself and her counsel relevant to the case (*id.*); and (3) that permitting Ms. Lays to assert the privilege to bar discovery of her counsel's communication of these allegedly emotionally damaging facts to her would unfairly deny American Family access to information vital to its defense (*id.* at 5).

---

[1] The pertinent part of the letter in question reads, "I note that no mediation has been set in this case. Please be advised that we are proceeding with IMEs of your clients. That office will be in touch with your office shortly. Of course, the money we spend on the IMEs will not be available as settlement proceeds, if any, for your clients."

[2] Counsel presented to the court at the November 16, 2011 hearing a copy of Ex. 10 to C. Lays November 16, 2011 deposition and Bates labeled SEACLASS 0001721 dated September 16, 2010 ("Sept. 16, 2010 Letter"), and a copy of Ex. 11 to C. Lays November 16, 2011 deposition and Bates labeled SEACLASS 0001722 dated October 12, 2010 ("Oct. 12, 2010 Letter"). Copies of the two letters at issue are attached to the Minutes of courtroom proceedings [Doc. No. 108].

American Family urges that "[p]articularly in light of her sworn deposition testimony that receiving this information caused her to suffer emotional harm, the way in which Ms. Lays' counsel communicated the alleged negotiation delays and the contents of the communications between American Family and her counsel almost certainly affected the way in which Ms. Lays absorbed, interpreted, and reacted to the information." *Id.*

## ANALYSIS

Jurisdiction in this action is based on Title 28 U.S.C. § 1332(d)(2), the class action provisions concerning diversity jurisdiction. See Amended Complaint ("Am.Compl.") [Doc. No. 47] at ¶ 20. Consequently, state law supplies the rule of decision on attorney-client privilege issues. *Frontier Refining Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir.1998).

The attorney-client privilege in Colorado is codified at Colo. Rev. Stat. §13-90-107(1)(b), as follows:

> An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.

*Id.* In general, the purpose of the attorney-client privilege is to encourage "full and frank communications between attorneys and their clients . . . ." *People v. Swearingen*, 649 P.2d 1102, 1104 (Colo.1982). "The privilege extends to confidential communications by or to the client in the course of gaining counsel, advice, or directions with respect to the client's rights or

obligations." *Mountain States Telephone and Telegraph Co. v. DiFede*, 780 P.2d 533, 541 (Colo.1989).  In addition, however:

> [T]he attorney-client privilege is not an absolute privilege and may be waived by the client. Any waiver must be demonstrated by evidence that the client, by words or conduct, has expressly or impliedly forsaken his or her claim of confidentiality with respect to the information in question and, thus, has consented to its disclosure.

*People v. Sickich*, 935 P.2d 70, 73 (Colo. App.1996); *Clark v. District Court*, 668 P.2d 3, 8 (Colo.1983) (a party may waive the protection of the privilege; or, in other words, consent to the disclosure).

The Colorado Supreme Court has held that "by placing in issue a confidential communication going directly to the claim or defense, a party impliedly waives the attorney-client privilege with respect to that communication." *DiFede*, 780 P.2d at 543.  In *DiFede*, the plaintiff filed complaints seeking to set aside a transfer of real property and changes of beneficiary executed by her ex-husband, and the defendants asserted the claims were barred by a separation agreement the plaintiff had signed. *Id.* at 537-38.  The plaintiff sought to rescind the separation agreement, contending she had been fraudulently induced to sign it because her then-husband's attorney, Raymond Wilder, had misled her about the enforceability of the agreement when she signed it. *Id.* at 538.  The defendants responded that the plaintiff's reliance on the attorney's statements were unreasonable because she had met with another attorney, Jack Foutch, ten days after she signed the agreement, and Foutch "must have told her" the agreement was enforceable. *Id.*

The Colorado Supreme Court noted an implied waiver of a privilege is appropriate when the following factors are present: "(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Id*. at 543-44 (*quoting League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849, 856 (Neb.1985)).  The court held the plaintiff had waived the attorney-client privilege with respect to the conversation she had with Foutch, explaining:

> When she alleged that she reasonably relied on Raymond Wilder's incorrect statement of the law, [plaintiff] injected **her knowledge or lack of knowledge** of the correct statement of the law as a crucial issue relevant to her claim of fraud-in-the-inducement.  Only Jack Foutch and [plaintiff] know whether Jack Foutch disabused her of the incorrect notion that the separation agreement was not immediately enforceable. It would be unfair for [plaintiff] to thrust her lack of knowledge of the correct state of the law into the litigation by her claim of fraudulent inducement while simultaneously retaining the attorney-client privilege to frustrate attempts by [defendants] to prove [her] knowledge of the correct state of the law and thereby negate the very foundation necessary to prevail in Susan's claim of fraudulent inducement.

*Id.* at 544 (emphasis added).

The Colorado court cited with approval the Nebraska Supreme Court's *League* decision, in which a minority shareholder (League) sued the corporation's president (Vanice) for breach of fiduciary duty.  374 N.W.2d at 851.  Vanice raised the affirmative defense that the four-year statute of limitations had run, and League asserted the statute had been tolled by Vanice's concealment of the transactions giving rise to the claims. *Id.* at 852.  The issue was whether League's former attorney could be compelled to testify regarding whether he had advised League

about the pertinent transactions more than four years before the claims were filed. *Id.* at 856. The court held: "When he alleged concealment, League injected **his knowledge, or lack of knowledge**, into the litigation as a crucial issue relevant to disposition of [his] claims. . . ." *Id.* (emphasis added).

The issue in this case is not whether or not Carla Lays knew about the Sept. 16, 2010 Letter and the Oct. 12, 2010 Letter. No one contends that she did not know about the existence of the letters. Rather, the issue is apparently what her attorney told her the letters meant; particularly, the Sept. 16, 2012 Letter. As noted, in the Amended Complaint, Ms. Lays claims

> 34. The American Family employee/lawyer, John Scherling, sent a letter to Mr. and Mrs. Lays informing them that any money paid by American Family for the IME's of Mr. and Mrs. Lays would be deducted from the Lays' available UM/U'S policy benefits.
>
> 35. American Family breached its duty of good faith and fair dealing with Mr. and Mrs. Lays, and unreasonably delayed payment of their claim, by its conduct during the pendency of their UM/U'S claim, including during litigation, and otherwise unreasonably subjected Mr. and Mrs. Lays to all or part of the scheme set forth in greater detail below.

Am.Compl. at ¶¶ 34–35. The Sept. 16, 2010 letter was undisputedly sent to Trent T. King, Esq. at 5536 Library Lane, Colorado Springs, Colorado, not to "Mr. and Mrs. Lays" as alleged in the Amended Complaint. Several weeks later the Oct. 12, 2010 Letter arrived, again addressed to only Mr. King, not to Mr. or Mrs. Lays. It does not appear to be disputed that Carla Lays had knowledge about the contents of the two letters at or near the time they were sent to Mr. King.

In order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client. *United States v.*

*Johnston*, 146 F.3d 785, 794 (10th Cir. 1998); *In the Matter of Grand Jury Subpoena*, 697 F.2d 277, 278 (10th Cir. 1983). In Colorado, the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009). Information which is merely factual and is simply relayed to a client through her attorney is not a privileged communication. *Sequa Corp. v. Lititech, Inc*. 807 F. Supp. 653, 660 (D. Colo. 1992).

Questions concerning whether or not Mr. King gave Mr. and Mrs. Lays a copy of the letter(s) or whether Mr. King told them about the letters or read or paraphrased the letters for Mr. and/or Mrs. Lays do not call for privileged information and must be answered by the deponent. The answers to these preliminary questions will inform the defendants about how the Lays came to know about each letter, approximately when they learned about the contents of each letter, and whether they actually were able to read for themselves the actual wording of the letters.

The communications that are privileged with respect to these letters is what Mr. King may have told Mr. and Mrs. Lays the letters legally meant or what Mr. King's interpretation of the language in the letters was or what Mr. King may have discussed with the Lays concerning the letters effect on the litigation or on the plaintiffs' strategy with respect to the claim and the litigation. It is this information as to which Defendants assert the privilege has been waived pursuant to the at-issue doctrine.

The parties obviously hotly dispute the meaning of "[o]f course, the money we spend on the IMEs will not be available as settlement proceeds, if any, for your clients" which closed the Sept. 16, 2010 letter from Mr. Scherling, attorney for American Family.  Plaintiff asserts the phrase meant "any money paid by American Family for the IME's of Mr. and Mrs. Lays would be deducted from the Lays' available UM/U'S policy benefits."  Am.Compl. at ¶ 34.  American Family asserts the phrase meant, that Mr. Scherling "anticipate[d] that the IMEs will affect [Scherling's] evaluation as to the reasonable settlement values of [Mr. and Mrs. Lays'] claims." Oct. 12, 2010 Letter.  Mr. Scherling stated in the letter, "my letter did not intend to suggest that the actual costs associated with the IMEs would reduce your clients' insurance benefits."  *Id*.

The court has been unable to find a place in the Amended Complaint where Plaintiff Carla Lays claims that the phrase in the Sept. 16, 2010 Letter, "the money we spend on the IMEs will not be available as settlement proceeds, if any, for your clients," alone specifically caused her emotional damage.  Instead, Ms. Lays and the other plaintiffs claim that American Family used various tactics to "unreasonably delay[] payment of their claim, by its conduct during the pendency of their UM/UIM claim, including during litigation, and otherwise unreasonably subjected Mr. and Mrs. Lays to all or part of the scheme . . . ."  Am.Compl. at ¶ 35.  Apparently, the threat Plaintiffs allege was contained in the Sept. 16, 2010 Letter was set forth as just one such tactic.

Comparing this case to *DiFede*, the court concludes that Ms. Lays –  by claiming bad faith in connection with a scheme to delay payment of UM/UIM claims by American Family – has not put her "knowledge or lack of knowledge" about the content of the Sept. 16, 2010 Letter

or the Oct. 12, 2010 Letter in dispute by filing the claim. Her knowledge about the letters and the language of the letters is not privileged and may be cleared up with a few questions to the extent those questions have not already been asked. Whether her attorney thought the language of the letter violated an insurer's lawful duty to its policyholder and whether or not the attorney conveyed such a conclusion to his client does not somehow invoke the protections implicit in *DiFede* and its progeny. If such communications took place between Mr. King and Mrs. Lays, that communication would have been quintessential privileged information – advice given to a client about an opponent's behavior that might have an effect on litigation. The defendants are not entitled to nor do they need to pry into such communications in order to defend against a claim that American Family engaged in a series of activities devised to delay or diminish payment to its policyholders.

Accordingly, there are no grounds to support an at-issue waiver of the attorney-client privilege between Carla Lays and her attorney, Trent T. King, concerning any advice or counsel given to her with respect to the meaning, implication, effect, affect, interpretation or insight he may or may not have conveyed to her with respect to the Sept. 16, 2010 Letter or the Oct. 12, 2010 Letter. Therefore, further deposition inquiry of Ms. Lays beyond that clearly articulated herein as not privileged is improper and will not be allowed.

SO ORDERED.

Dated this 1st day of December, 2011.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge