IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 11-cv-01096-WJM-KMT

KATHLEEN SEABRON,
ROBERT LAYS,
CARLA LAYS,
KRISTY LARSON, and
VALERIE JENKINS,
individually, and as class representatives of behalf of all others similarly situated,

    Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, and
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN,

    Defendants.

# ORDER

This matter is before the Court on Defendants' Motion for Partial Summary Judgment (the "Motion"). (ECF No. 49.) Plaintiffs have filed a Response to the Motion (ECF No. 97), and Defendants have filed a Reply (ECF No. 109). The Motion is ripe for adjudication. For the following reasons, Defendants' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I.  BACKGROUND

This action is brought by three insureds of Defendant American Family Mutual Insurance Company ("American Family") and two insureds of Defendant American Standard Insurance Company of Wisconsin ("American Standard"), alleging that

Defendants unreasonably denied payment, delayed payment, and/or offered unreasonably low payments on uninsured and/or under-insured ("UM/UIM") claims submitted by the insureds. (ECF No. 47.)[1] Plaintiffs allege that Defendants' bad-faith handling of Plaintiffs' UM/UIM claims was the product of a widespread scheme employed by Defendants to regularly delay and underpay on UM/UIM claims submitted by their insureds. (*See id.*) Specifically, among other practices allegedly employed by Defendants on UM/UIM claims, Defendants allegedly (1) utilized a Medical Services unit comprised of nurses that had the primary goal of undervaluing insureds' UM/UIM claims, with the nurses never conducting further investigation of the claims (other than evaluating the file) and often contradicting the medical findings of the insureds' own physicians; and (2) utilized an in-house legal department to litigiously defend in bad faith any legal claims brought by Defendants' insureds. (*See id.*) Plaintiffs also allege that Defendants actively concealed from their insureds (1) the bases for coverage decisions made by Defendants, and (2) the claims handling practices utilized by Defendants. (*See id.*)

The five Plaintiffs bring this action as a purported class action. (ECF No. 47, at 1, 26-33.) However, the action has not been certified as a class action, and Plaintiffs have not yet moved for class certification. (*See* ECF No. 147, at 21-22.) Because no party has requested that the Court delay ruling on Defendants' Motion for Partial

---

[1] American Standard is a wholly owned subsidiary of American Family. (ECF No. 47, ¶ 18; ECF No. 51, ¶ 18.) Because the distinction between the two Defendants is not material to the resolution of the Motion, and for purposes of simplicity, the Court in this Order will refer to both Defendants collectively as "Defendants."

Summary Judgment until after consideration of the class certification issue, and because this Court has discretion to narrow Plaintiffs' claims via summary judgment prior to ruling on class certification, *see Kerber v. Qwest Group Life Ins. Plan*, No. 07-cv-00644, 2009 WL 798569, at *1 (D. Colo. Mar. 24, 2009) (citing cases), the Court will proceed to rule on Defendants' Motion for Partial Summary Judgment.

Plaintiffs bring four claims for relief in this action: violation of Colo. Rev. Stat. § 10-3-1115 ("statutory bad faith claim") (First Claim), breach of the duty of good faith and fair dealing ("common law bad faith claim") (Second Claim), violation of the Colorado Consumer Protection Act ("CCPA") (Third Claim), and an abuse of process claim (Fourth Claim). (ECF No. 47, at 34-41.)[2]

Defendants now move for summary judgment on the following claims: (1) the Third Claim brought under the CCPA, (2) the Fourth Claim alleging abuse of process, and (3) all claims brought by Plaintiff Valerie Jenkins. (ECF No. 49.)[3]

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A fact is "material" if under the

---

[2] The parties agree that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. ¶ 1332(d)(2). (ECF No. 47, ¶ 20; ECF No. 51, ¶ 20.)

[3] Thus, Defendants generally do not move for summary judgment as to the statutory and common law bad faith claims (except as to Plaintiff Jenkins).

relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995).

When, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden on a motion for summary judgment by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotation marks omitted). If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quotation marks omitted).

### III.  ANALYSIS

**A.     CCPA Claim**

Defendants' Motion first argues for dismissal of Plaintiffs' Third Claim for Relief brought under the CCPA, Colo. Rev. Stat. § 6-1-101, *et seq.* (ECF No. 49, at 6-10.) "The CCPA is a remedial statute intended to deter and punish deceptive trade practices committed by businesses in dealing with the public.  The CCPA's broad legislative purpose is to provide prompt, economical, and readily available remedies against consumer fraud." *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 50-51 (Colo. 2002).

In the Motion, Defendants frame Plaintiffs' CCPA claim as being brought under Colorado Revised Statute § 6-1-105(1)(e), argue that such a claim requires a false representation, argue that Plaintiffs need to plead such fraudulent conduct with particularity, and argue that Plaintiffs have failed to plead their CCPA claim with particularity under Federal Rule of Civil Procedure 9(b).  (ECF No. 49, at 6-8.) Defendants also argue that the portion of Plaintiffs' CCPA claim alleging that Defendants should be forced to disclose to insureds Defendants' internal claims processing procedures lacks merit.  (*Id.* at 8-10.)

In response, Plaintiffs first argue that Defendants' Motion, brought under Federal Rule of Civil Procedure 56, cannot challenge the sufficiency of the pleadings, an argument properly made under Rule 12(b)(6).  (ECF No. 97, at 4.)  Plaintiffs argue that Defendants failed to timely file a Rule 12(b)(6) motion, and so should not be able to

attack the sufficiency of the pleadings via a Rule 56 motion. In reply to that argument, Defendants state, "[D]ismissal for failure to state a claim upon which relief can be granted . . . may be sought either by Rule 12(b)(6), Rule 12(c), Rule 56 or trial." (ECF No. 109, at 4.) As the only support cited for that proposition Defendants cite 5C Wright & Miller, *Federal Practice and Procedure*: Civil 3rd § 1369, at 258. The Court's review of that section of Wright & Miller, and other relevant sections, does not support the proposition advanced by Defendants. Indeed, Rule 56 by its very language pertains to the issue of whether there is a "genuine dispute as to any material fact and whether the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Further, courts have held that Rule 56 is not the proper vehicle for attacking a pleading for failure to plead fraud with particularity. *See Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 450 (S.D.N.Y. 2006) ("Rule 9(b) is typically invoked on motions to dismiss. It is not the appropriate device to vindicate [defendant's] rights at [the summary judgment] stage of proceedings."); *Wortley v. Camplin*, No. 01-122-P-H, 2001 WL 1568368, at *10 (D. Me. Dec. 10, 2001) ("The plaintiffs first argue that the counterclaim fails to plead the elements of [the counterclaim] with sufficient particularity, but that argument is appropriate to a motion to dismiss rather than to a motion for summary judgment."). The Court agrees with Plaintiffs, and on this ground denies the Motion as to Defendants' argument challenging the sufficiency of Plaintiffs' pleading of the CCPA claim.

The Court also denies the Motion as to this argument on more substantive grounds. Defendants try to frame Plaintiffs' CCPA claim as only being brought under Colorado Revised Statute § 6-1-105(1)(e), and then base all their arguments on Plaintiffs' alleged failure to plead that specific provision with particularity. While the Third Amended Complaint does contain a single paragraph citing § 6-1-105(1)(e) as one basis for Plaintiffs' CCPA claim, *see* ECF No. 47, ¶ 132, Plaintiffs raise a host of alleged conduct throughout their Third Amended Complaint, and throughout the Third Claim for Relief, such that the Third Amended Complaint cannot properly be construed as only challenging the single unfair trade practice listed in § 6-1-105(1)(e). (*See generally* ECF No. 47 & ¶¶ 126-136.)

Further, this Court has previously held in another case that the list of deceptive trade practices contained in Colorado Revised Statute § 6-1-105(1) is not exhaustive (and so the plaintiffs there were not limited by the specific provisions of § 6-1-105(1)). *See D.R. Horton, Inc.-Denver v. The Travelers Indem. Co. of Am.*, No. 10-cv-02826, 2012 WL 527204, at *3 (D. Colo. Feb. 16, 2012). The basis for this Court's holding was that the Colorado Supreme Court, in interpreting § 6-1-105(1) for purposes of bad faith insurance practices, came to the same conclusion:

> The CCPA does not list all the industries to which it applies, nor does it specify all the types of transactions it covers. In enacting the statute, the General Assembly could not have possibly enumerated all, or even most, of the practices that the CCPA was intended to cover. Instead, the General Assembly focused on prohibiting, in very general terms, those actions that are likely to injure the public. If we were to decide that the only practices covered are those specifically listed in the act, we would be severely hindering the CCPA's broad remedial power. We find that the list

>in section 6-1-105 is not exhaustive and because deceptive or unfair practices in the business of insurance could clearly injure the public they are within the purview of the CCPA.

*Showpiece Homes*, 38 P.3d at 54.  The Court is aware of no other Colorado Supreme Court decision overturning or limiting this rule of Colorado law, and so this Court is required to follow and apply *Showpiece Homes*.  *See, e.g.*, *Romero v. Int'l Havester Co.*, 979 F.2d 1444, 1449 n.3 (10th Cir. 1992) ("A federal court sitting in diversity and applying state law is obligated to follow the pronouncements of that state's highest court."); *see also Eaton v. Jarvis Prods. Corp.*, 965 F.2d 922, 926-27 (10th Cir. 1992) (when presented with an ambiguous statute, federal courts sitting in diversity are to look to decisions of the state's highest court for the correct interpretation of that statute).

Defendants cite *Coors v. Security Life of Denver Insurance Company*, 91 P.3d 393 (Colo. App. 2003), for the proposition that the list in § 6-1-105(1) *is* exhaustive.  Indeed, the Colorado Court of Appeals in *Coors*, in its analysis, specifically quoted the above language from *Showpiece Homes*, and then concluded, "*Showpiece Homes* did not hold that other conduct not enumerated in § 6-1-105 may constitute a deceptive trade practice under the CCPA."  This Court is not persuaded by the *Coors* court's explanation for so limiting *Showpiece Homes*, and in any event must, in accord with the Tenth Circuit's decision in *Romero,* follow the sufficiently clear holding in *Showpiece Homes*, a Colorado Supreme Court decision.  *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008) ("[W]e are not bound by decisions of state intermediate appellate courts when we apply state law in a diversity case; rather, we are to follow

decisions of the state's highest court, or, when none is in point, predict how it would rule on the issue.").

Thus, Defendants' arguments as to the majority of Plaintiffs' CCPA claim, in which Defendants improperly narrow Plaintiffs' claim as only being brought under § 6-1-105(1)(e), lack merit. Summary judgment is not warranted as to the majority of Defendants' arguments and as to the majority of Plaintiffs' CCPA claim.

As to the issue of what information an insurer must divulge to an insured during the claims handling and resolution process, Plaintiffs have established that Colorado law requires an insurer to provide a reasonable explanation for its coverage decision. *See, e.g.*, Colo. Rev. Stat. § 10-3-1104(1)(h)(XIV) (prohibiting an insurance company from "[f]rom failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement"); Colo. Rev. Stat. § 10-3-1104(1)(h)(X) (prohibiting insurance companies from "[m]aking claims payments to insureds or beneficiaries not accompanied by statement setting forth the coverage under which the payments are being made). However, Plaintiffs have provided no legal support for their argument that an insurance company must disclose to an insured, during the claims handling and resolution process, *all* of the inner-workings of the insurer's claim handling and resolution process, *e.g.*, by having to turn over the entire internal working file maintained by the insurer. Therefore, the Court will grant summary judgment on the CCPA claim as to that narrow issue.

### B.     Abuse of Process Claim

Defendants also move for summary judgment as to Plaintiffs' abuse of process claim. (ECF No. 49, at 10-11.) "In Colorado, abuse of process requires proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages." *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007).

Defendants argue that the abuse of process claim cannot lie against three of the five Plaintiffs because those three Plaintiffs have never been involved in any judicial proceedings with Defendants prior to this action. As to the other two Plaintiffs – Robert and Carla Lays ("the Lays") (who previously filed suit against Defendants in state court) – Defendants argue that Plaintiffs have failed to identify any improper process that was used against the Lays in that action.

In response, Plaintiffs all but concede that Plaintiffs Jenkins, Seabron, and Larson cannot maintain their abuse of process claims against Defendants. (ECF No. 97, at 11-12.) The Court agrees because two of those Plaintiffs have never been involved in litigation with American Family before, and the one suit that Plaintiff Larson filed against American Family previously was voluntarily dismissed before American Family was served with the Summons and Complaint. *See Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007) (stating that an abuse of process claim requires "an ulterior purpose in the use of judicial proceedings").

Plaintiffs contest summary judgment as to the Lays' abuse of process claims against Defendants, however. The basis for their argument is that John Sherling, the in-house American Family attorney defending the prior lawsuit brought by the Lays, sent a letter to Plaintiffs' counsel during that litigation stating, *inter alia*, "Please be advised that we are proceeding with [Rule 35 Independent Medical Evaluations ("IMEs")] of your clients. . . . Of course, the money we spend on the IMEs will not be available as settlement proceeds, if any, for your clients." (ECF No. 97-2.) Plaintiffs argue, "The letter . . . includes an implicit threat that American Family would seek the 'legal process' of [IMEs], which would result in reducing both the available benefits under the policy and American Family's determination of the value of [the Lays'] UM/UIM claims." (ECF No. 14.)

Summary judgment is appropriate on the Lays' abuse of process claims. To the extent the claims are based on Sherling's use of Rule 35 Independent Medical Evaluations in that action, Plaintiffs have made no showing that American Family did not have a right to conduct the IMEs during the normal course of that litigation. *See Mintz v. Accident & Injury Med. Specialists, PC*, No. 08CA1867, 2010 WL 4492222, at *3 (Colo. App. Nov. 10, 2010) (no abuse of process for using discovery procedures justified in proceeding's regular course, even if used for an ulterior purpose). To the extent the claims are based on Sherling's implicit threat that he would lower future settlement offers if he were forced to conduct IMEs, the Court will not allow an abuse of process claim to proceed past summary judgment when based only on what can best

be described as apparent posturing during negotiations in the litigation process.

Summary judgment is granted in favor of Defendants on Plaintiffs' abuse of process claim.

**C.    Claims Brought by Plaintiff Valerie Jenkins**

Finally, Defendants move for summary judgment as to all (four) claims brought by Plaintiff Valerie Jenkins in this action. (ECF No. 49, at 11-14.) Defendants argue that Ms. Jenkins accepted a settlement with American Family of her claim for UM/UIM benefits, under which American Family paid Ms. Jenkins $2,892.66 and Ms. Jenkins signed a release of all potential claims against American Family based on the underlying automobile accident. (*Id.*) In response, Plaintiffs argue that (1) the release only covers bodily injury claims and not extra-contractual claims for bad faith; (2) there was no consideration for the release; and (3) the release is unconscionable. (ECF No. 97, at 15-20.)

The release that Ms. Jenkins entered into provides,

> For the sole consideration of two thousand eight hundred nine two and 66/100 dollars ($2,892.66) paid by [American Family], identified by its Policy No. 08344807-01, receipt of which is hereby acknowledged, I/We hereby fully and forever release and discharge said company from all claims, demands, damages, actions and rights of action, of whatever kind or nature which I/We now have or may hereafter have against said company under the terms of the "Uninsured Motorist" coverage forming apart of the above-described policy, on account of bodily injury sustained by Valerie Jenkins, resulting from an accident which occurred on or about October 7, 2006, at or near Aurora, CO. The phrase "bodily injury" means bodily injury, sickness, or disease, including death resulting therefrom.

(ECF No. 49-1, at 17.)

"The interpretation of an insurance policy, like any written contract, presents a question of law, and, therefore, is appropriate for summary judgment." *Signature Dev. Cos., Inc. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1218 (10th Cir. 2000) (applying Colorado law) (citation and quotation marks omitted). "Under Colorado law, we construe insurance policies using general principles of contract interpretation. Thus, . . . a policy's language must be construed in accordance with the plain meaning of the words used." *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272 (10th Cir. 2011).

The release at issue, boiled down to its basic and key terms, provides that Ms. Jenkins "fully and forever" released "all" claims "of whatever kind or nature" she now has "or may hereafter have" against American Family "under the terms of" the policy, "on account of bodily injury sustained" from the accident at issue. The very broad language that Ms. Jenkins was releasing "all" claims "of whatever kind or nature" she may have against American Family strongly suggests that the proper interpretation of the release is that it applies to the claims she brings in this action. This is particularly the case given that there is no countervailing language in the release which evinces an intent by the parties to carve out or except one or more types of claims from inclusion within the very broad, and very clear, "all claims" language of the release.

The question turns to whether any qualifying language later in the release can overcome this presumption. There are two qualifying passages to address. The first is that the release applies to claims "under the terms of" the policy. The second is that the


release applies to claims "on account of bodily injury sustained" by Ms. Jenkins. Given that the release applies to "all" claims "of whatever kind or nature," the Court concludes that the only reasonable interpretation of the two qualifying passages is that the claims released are those (1) predicated on the contractual relationship between Ms. Jenkins and Defendants under this particular policy,[4] and (2) arise from the bodily injuries sustained by Ms. Jenkins in the particular accident at issue.[5] Therefore, the only reasonable interpretation of the release is that it precludes the claims being brought by Ms. Jenkins in this action.[6]

Plaintiffs' two other arguments are also unavailing. First, by the very terms of the release, there was consideration for the signing of the release. (ECF No. 49-1, at 17 ("For the sole consideration of . . . $2,892.66 . . . I/We hereby fully and forever release . . . .") Regardless of whether Defendants paid Ms. Jenkins that amount solely so she would release any further claims against Defendants, or whether Defendants paid that amount to obtain the release *and* in settlement of Ms. Jenkins's claim for UM/UIM

---

[4] For example, no claims could lie against Defendants if Ms. Jenkins had not taken out an insurance policy with Defendants, Ms. Jenkins was not releasing any claims against Defendants based on some other insurance policy taken out by Ms. Jenkins, and Ms. Jenkins was not releasing claims against Defendants based on some other (e.g., non-insurance-based) relationship between Ms. Jenkins and Defendants.

[5] For example, if Ms. Jenkins had not suffered bodily injuries in the accident, she would have had no basis to submit a claim to Defendants based on the bodily injuries she suffered, and she would not now have any basis to claim, for example, bad faith breach of the insurance contract.

[6] Because this is the only reasonable interpretation of the release, there are no ambiguous terms to construe in favor of Ms. Jenkins. Further, even if the two qualifying passages are ambiguous, there is no basis to construe the passages in a way that would allow Ms. Jenkins to bring her claims in this action. *See Greystone Constr.*, 661 F.3d at 1284.

benefits, there is no basis in the record to conclude that Defendants paid that amount *solely* in settlement of Ms. Jenkins's claim for UM/UIM benefits (absent the release).

Second, there is no basis in the record to conclude that the release is unconscionable. The issue of whether a contract is unconscionable is a question of law to be decided by the Court. *See Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 849 (10th Cir. 1986) (applying Colorado law). Under Colorado law, the standard for unconscionability is as follows:

> In order to support a finding of unconscionability, there must be evidence of some overreaching on the part of one of the parties such as that which results from inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party.

*Id.* (quoting *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986)). There is no basis to conclude that the release was unconscionable because there is insufficient evidence in the record indicating that the settlement terms were unreasonably favorable to Defendants. While Plaintiffs obviously *allege* in this action that the terms were unreasonably favorable to Defendants and that Defendants have a practice of underpaying UM/UIM claims, such allegations are not evidence. Further, Ms. Jenkins's statement in her interrogatory response that she viewed the terms as "unfair" does not create a triable issue as to whether they were "unreasonably favorable" as a matter of law.

Summary judgment is granted in favor of Defendants on all claims brought against them by Plaintiff Valerie Jenkins in this action.

## IV. CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

(1) Defendants' Motion for Partial Summary Judgment (ECF No. 49) is GRANTED IN PART and DENIED IN PART;

(2) Defendants' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART as to Plaintiffs' Third Claim for Relief brought under the Colorado Consumer Protection Act.  The Motion is DENIED as to the entire CCPA claim *except* that summary judgment is GRANTED to the extent Plaintiffs are seeking to pursue a CCPA claim based on Defendants' alleged failure to disclose to their insureds, during the claims handling and resolution process, the inner-workings of that internal claims handling and resolution process (as opposed to disclosing the bases for Defendants' resolutions of the claims);

(3) Defendants' Motion for Partial Summary Judgment is GRANTED as to Plaintiffs' Fourth Claim for Relief:  the abuse of process claim.  Plaintiffs' abuse of process claim is hereby DISMISSED.  The Third Amended Complaint (ECF No. 47) will remain the operative complaint in this action except that only the first three claims for relief hereinafter remain viable; and

(4) Defendants' Motion for Partial Summary Judgment is GRANTED as to all claims brought by Plaintiff Valerie Jenkins in this action.  Plaintiff Valerie Jenkins is hereby DISMISSED as a named plaintiff in this action.  The Third Amended Complaint (ECF No. 47) will remain the operative complaint in this action except

that Valerie Jenkins is no longer a named plaintiff in the action.  The Court DIRECTS the parties to delete Valerie Jenkins's name from the caption in any further filings with the Court.

Dated this 30th day of April, 2012.

                                                         BY THE COURT:

                                                         _____
                                                         William J. Martínez
                                                         United States District Judge