IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 11–cv–01096–WJM–KMT

KATHLEEN SEABRON,
ROBERT LAYS,
CARLA LAYS,
KRISTY LARSON, and
VALERIE JENKINS, individually, and as class representatives of behalf of all others similarly
situated,

       Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, and
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN,

       Defendants.

---

## ORDER

---

    This matter is before the court pursuant to "Defendants' Motion for Clarification/
Reconsideration of Court's March 27 Order and Request for Expedited Consideration" [Doc. No.
151] ("Reconsideration Motion") filed April 2, 2012 and on "Plaintiffs' Motion for Extension of
Time/Clarification Regarding Dates for Discovery Cut Off and Class Certification" [Doc. No.
175] filed June 14, 2012.  Plaintiffs filed a response to Defendants' Reconsideration Motion
[Doc. No. 155] to which Defendants replied on April 11, 2012 [Doc. No. 157].[1]

---

[1] Plaintiffs also filed an Objection to this Court's March 27, 2012 Order which is pending
before the District Court.  [Doc. No. 156, filed April 10, 2012.]  Defendants filed a Response to

On April 30, 2012, District Judge William J. Martínez issued his Order granting in part and denying in part Defendants' Motion for Summary Judgment ("SJ Order").[2]  [Doc. No. 165.] Since the SJ Order appeared to impact the composition of claimants who might qualify as potential class members thereby affecting issues raised in the Reconsideration Motion, this court asked for supplemental briefing addressing that issue and staying compliance with its March 27, 2012 Order ("Claim File Order").  (*See* Doc. No. 166, hereinafter referenced as "Stay Order.") The parties filed supplemental briefs on May 11, 2012.  [*See* Doc. Nos. 170 and 171.]

As noted by this court in the Stay Order,

The [Reconsideration] motion seeks clarification on three basic issues: 1) whether the sample of claim files to be produced by Defendants pursuant to this court's March 27, 2012 Order should include non-putative-class members, i.e. persons whose Colorado UM/UIM claims were not referred to Medical Services and/or Claims Legal and, if the sample should include UM/UIM claimants whose claims were not so referred, whether the percentage size of the sample is reasonable given the far greater size of the universe of claimants from which the sample will be drawn; 2) whether settlement authority and reserve information in the sample files can be withheld in active, pending claims; and, 3) whether information post-dating the filing of this lawsuit is required.

Stay Order at 1-2.

---

that Objection on May 4, 2012  [Doc. No. 167] and Plaintiffs filed a Reply on May 18, 2012 [Doc. No. 173].  In reconsidering the March 27, 2012 Order, this court has considered the issues raised by parties in connection with the Objection as well as the briefing specific to the Reconsideration Motion.

[2] The Plaintiffs have filed a Motion for Reconsideration of the District Court's SJ Order which is currently pending before Judge Martínez.  [Doc. No. 169.]

### A.    Universe of Claim Files

### 1.    Limitation to Putative Class Files

Plaintiffs' original Motion seeking production of claim and legal files for UM/UIM

claimants was captioned, "Plaintiffs' Motion to Compel Complete Putative Class Files &

Documents."  [Doc. No. 61]  In spite of the caption, which inserted the term "putative class,"

Plaintiffs sought enforcement of their Request for Production of Documents ("RFP") No. 2,

which  reads

> **Request for Production No.2:** Please identify and produce all documents and
> communications relating to and/or mentioning any and all UM/UIM claims made
> by persons within the State of Colorado under automobile insurance policies
> issued by you with dates of loss between May 4, 2006 and May 4, 2011 including,
> but not limited to, the complete "claim file" and "legal file" for each claim.

(Mot. to Compel [Doc. No. 61], Ex. 6, "Defendants' Responses to Plaintiffs' First Set of

Requests for Production of Documents.")  Defendants objected to RFP No. 2 in its entirety, (*id.*)

however offered a compromise sampling of ten claim files concerning putative class members to

be produced under particularized conditions.   One of Defendants' original objections to RFP No.

2 was that it called for files not involving putative class members.  (*Id.*)  After Plaintiffs filed

their Motion to Compel, Defendants objected to Plaintiffs' Motion in the following respects: the

date limitation beginning in May 4, 2006 instead of May 4, 2008; producing privileged

information contained in the requested files; producing claim files for the entire putative class

would be overly burdensome; producing medical or other private documents might violate

privacy rights of non-parties; and producing information unrelated to class certification was

inappropriate at this stage of the discovery.  [Doc. No. 75.]  Notably, Defendants did not repeat

their objection that Plaintiffs were seeking files pertaining to non-putative class members.  It now appears to the court that Defendants believed the universe of claim files at issue in the Motion to Compel had been voluntarily limited by the plaintiffs to putative class members only. The court, however, missed that nuance and considered RFP No. 2 as written to be the crux of the discovery dispute.

Defendants, based on their interpretation of the effect of Plaintiffs' motion language, asserted that the universe of files at issue was approximately 1600.  Plaintiffs reaffirmed their request for files of putative class members only in their Reply and did not challenge the 1600 figure as deficient.  Clearly, between the Motion, Response and Reply, in spite of Plaintiffs hollow argument now that their motion was "imprecise in off-handed references to "putative class" claim files in their motion to compel," the parties all believed that the issue involved only "putative class" member files.  The court was the only participant in the dispute still adhering to the language of the original request requiring production of all UM/UIM files.

As explained by the Defendants in the Reconsideration Motion, the actual universe of files responsive to RFP No. 2 (all UM/UIM claims originating during the relevant period) was significantly higher than what either Plaintiffs or Defendants considered to be potential putative class members - i.e., those UM/UIM claims made during the relevant time period which were

"referred either to Medical Services or Claims Legal."[3]   (Reconsideration Motion at 2, ¶ 1, 3.)[4]

The Plaintiffs further limited their definition of the putative class in the Second Amended Complaint by specifically excluding

> (1) any person who submitted a claim to Defendant for personal injuries under his or her uninsured/underinsured motorist coverage which was the subject of any lawsuit or arbitration demand filed by said person during the Class Period and in which a final judgment or award was entered; and (2) all present officers, directors, employees and agents of Defendant.

Second Am. Compl. at ¶ 96.

In the Claim File Order, this court ordered a sampling from the universe of claims identified in RFP No. 2 and provided reason and justification for so doing.  While the court continues to believe that such an approach would be appropriate and useful in the context of class certification, it is beyond cavil that the Motion to Compel filed by the Plaintiffs requested only putative class member files as defined in the Second Amended Complaint.  The defendants reasonably relied on the Plaintiffs' motion as conceding Defendants' original objection to RFP No. 2 concerning production of files "about persons who are not class members."

---

[3] Apparently the universe of files contained in RFP No. 2 is approximately 4,360.  (Reply [Doc. No. 157] at 3.)

[4] The Second Amended Complaint defines "putative class members" as, "[a]ll residents of Colorado who, within the period of the applicable statute of limitations, (a) were or are insured by Defendant under automobile liability policies or motor vehicle liability policies containing uninsured motorist and/or underinsured motorist coverage; (b) have made claims to Defendant for personal injuries under their uninsured/underinsured motorist coverage; and (c) have had their claims submitted to Defendant's Medical Services department and/or whose claims were handled by Defendant's Legal Services department.  (Second Am. Compl., [Doc. No. 38] at ¶ 96.)

(Reconsideration Motion at 3.)  Therefore, the court, upon reconsideration, now holds that the motion to compel sought only files of putative class members and therefore any sampling of files ordered by the court should be based upon the universe of files associated with only putative class members.

### 2.    *Effect of SJ Order on Membership in Putative Class*

In the SJ Order, District Judge Martínez found that the release signed by former named plaintiff Valerie Jenkins precluded her participation as a plaintiff in this action.  The court found that Valerie Jenkins's release

> "fully and forever" released "all" claims "of whatever kind or nature" she now has "or may hereafter have" against American Family "under the terms of" the policy, "on account of bodily injury sustained" from the accident at issue. The very broad language that Ms. Jenkins was releasing "all" claims "of whatever kind or nature" she may have against American Family strongly suggests that the proper interpretation of the release is that it applies to the claims she brings in this action. This is particularly the case given that there is no countervailing language in the release which evinces an intent by the parties to carve out or except one or more types of claims from inclusion within the very broad, and very clear, "all claims" language of the release.

SJ Order at 13.  Judge Martínez upheld the validity of the release signed by Jenkins and dismissed all of Jenkins' claims.  Since the release at issue was a so-called, "standard" release used by the Defendants at that time when closing out its claims by payment to the insured, the dismissal of plaintiff Jenkins' claims on that basis significantly changes the potential class.  The class, if certified, will now exclude those persons whose first-party claims arising between May

4, 2006 and May 4, 2011 have been paid by Defendants pursuant to a form of release similar to that used for Ms. Jenkins' claims (hereinafter referred to as a "Jenkins Release").[5]

Considering the totality of Plaintiffs' Second Amended Complaint, the Motion to Compel as limited to the putative class members' files and the SJ Order, Defendants now argue that the potential class has been narrowed to include only Colorado UM/UIM claimants insured by American Family with dates of loss between May 4, 2006 to May 4, 2011who have not settled with American Family and executed a Jenkins Release and whose claims files were referred to Medical Services or Claims Legal or both during the class period and who have not received a final judgment following litigation or arbitration. *Id*. at 5-6. Defendants have stated that approximately 200 claims meeting this definition are pending in Claims Legal, and approximately 33 claims meeting the definition have been referred to Medical Services. *Id*. (*See also* Defendants' Status Report [Doc. No. 172].)

The court agrees with Defendants as to the make-up of the universe of potential files at issue in the Motion to Compel as it was drafted and then later modified by the SJ Order. The court disagrees, however, that "all" the claim files at issue necessarily are 'active cases.' There is some evidence and argument that occasionally claims were and are settled using a non-standard release or no release, thus making it incumbent upon the Defendants to thoroughly

---

[5] Defendants allege that "[m]ost claims with dates of loss between May 4, 2006 and May 4, 2011, have been paid by American Family, and settled with the exchange of a standard release."  (Supp. Br. of Defendants [Doc. No. 170] at 5.)

review all UM/UIM claims made during the relevant time period to determine which claims specifically meet the newly established criteria for inclusion in the putative class.

### 3.    *Documents Created Subsequent to May 4, 2011*

This matter was removed to federal court on April 25, 2011.  [Doc. No. 1, Amended Notice of Removal].  The Amended Complaint [Doc. No. 11] was filed on May 4, 2011.  The parties are engaged in class certification discovery only at this time.  This court has and will continue to allow production of a sampling of the putative class members' claims files in order to facilitate Plaintiffs' ability to determine whether the case meets the requirements of Fed. R. Civ. P. 23(a) to obtain certification of a class, specifically the requirements of numerosity, commonality, typicality and that the named plaintiffs can fairly and adequately represent the class.  The court concludes that the sample size allowed in Section B, *infra*, together with the files of the named plaintiffs, is an adequate representation of the universe of potential class members to allow the Plaintiffs to make such a showing if, in their estimation, the evidence supports certification.  Given the purpose for which this discovery is being allowed, there is no reason to believe that providing additional claim files arising subsequent to the date of filing of the lawsuit would help Plaintiffs with the required showing to support their motion for class certification.  However, should class certification be granted, the "end date" of May 4, 2011 would certainly be revisited during the merits phase of discovery.

### B.    *Sample Parameters*

As noted in the previous Order, there is scant authority suggesting the appropriate size of any sample of the claim and legal files in the class action discovery context, except for implicit

approval of sampling in general.  (*See* Manual for Complex Litigation, Fourth, §21.14 (2009).)

Defendants have estimated that the time required to gather each file associated with a claim and

prepare it for production is between 2 and 6 hours. (Resp. to Mot. to Compel, [Doc. No. 75], Ex.

12, Alsup Decl. at ¶ 3.)  Therefore, Defendants would be required to expend between 466 and

1,398 hours producing the files and documents associated with approximately 233 claims which

are potentially contained in the putative class.  On the other hand, Plaintiffs carry the burden of

convincing the District Court that the claimants in the putative class are united by sufficient

numerosity, commonality, and typicality to be considered as a group and additionally to prove

that the named plaintiffs can fairly and adequately represent the class.  The court continues to

believe that a sample of files would strike an appropriate balance between the burden of

production on the defendants and the plaintiffs' need to examine some files of potential class

members to prove their certification contentions.

Plaintiffs initially argued against the use of a random sample for production of potential

class member files, but suggested alternatively, that if the court was inclined to allow discovery

only on a sample basis, the sample size should be no less than 25%.  (Plaintiffs' Supp. Mot.

[Doc. No. 99] at 4.)  Based on the fact that the universe of claims is significantly smaller than

originally thought, the court agrees that a more significant percentage of claims should be

examined to ensure that the sample is truly representative.  *See, Tagatz v. Marquette University*,

861 F.2d 1040, 1045 (7th Cir. 1988) (a larger sample is more reliable than a smaller one);

*Chichilnisky v. Trustees of Columbia University*, No. 91 Civ. 4617 (MJL),1994 WL 88247, *2

(S.D.N.Y. 1994) (same).  Further, statistical evidence is "only helpful when the plaintiff

faithfully compares one apple to another without being clouded by thoughts of Apple Pie ala Mode or Apple iPods." *E.E.O.C. v. Brinker Intern. Payroll Co., L.P.*, No. 05-C-1063, 2007 WL 775584, *9 (E.D. Wis. March 9, 2007) *quoting Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007).

Therefore, the court concludes that a sample of fifty claims within the narrowed group of potential class members will be adequate to allow Plaintiffs the opportunity to prepare for their class certification arguments while not significantly overburdening the Defendants in preparation of the discovery at this stage.

Therefore, Defendants shall be required to select a sample of fifty claims and compile for production all files associated with those claims using the following method:

1.  Identify all UM/UIM claims made by persons within the State of Colorado under automobile insurance policies issued by Defendants with dates of loss between May 4, 2006 and May 4, 2011 wherein the claims, at some point, were referred to either Medical Services or Claims Legal or both.

2.  Eliminate from that list the claims associated with the named plaintiffs in this action and any claim which was the subject of any lawsuit or arbitration demand filed by claimant during the Class Period and in which a final judgment or award was entered.

3.  Eliminate from the list compiled in No. 1 and 2, all claims where the claimant has settled with Defendants and executed a "standard" release of claims similar to that executed by former named plaintiff Valerie Jenkins which was the subject of Judge Martínez's SJ Order.  Create and maintain a list of the eliminated claim files for potential future inspection.

4.  Assign every remaining identified claim a unique identifying number.

5.  Utilize a random process, for instance a computer software program designed to pull random numbers from a list, to select fifty claims from the total claims

identified in No. 4.  Document the method of random production for potential future inspection.

6.       Subject to compliance with the remaining aspects of this Order, compile and produce to the Plaintiffs all files, documents, spreadsheets and other data or documents  associated with each of the fifty claims on or before July 27, 2012.

### C.       *Permissible Redactions*

This case involves claims of an insured against his own insurance company, usually known as a first-party claim.[6]  The purpose of uninsured motorist coverage is to compensate insureds for loss caused by negligent and financially irresponsible motorists outside the control of either the insured or his own insurance carrier.  *Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 814 (Colo. App. 2006); *Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759 (Colo. 1989).  In this context, if the insured suffers a loss in an accident, his own insurer must pay the insured, up to the limits of the policy, all the losses to which the insured would be legally entitled from the uninsured motorist but for his lack of adequate insurance.  *Id*.  As noted in the court's original Claim File Order, first-party claims are uniquely different from third-party claims because an insurer has a legal obligation to deal with its own insured fairly and in good faith, often removing adversarial posturing.  *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984).

In the Claim File Order this court originally found that evidence of the reserves and settlement authority contained in the sample claim files would likely lead to admissible evidence

---

[6] A third party claim arises when a person damaged in an auto accident makes claims against the other driver's insurance company.  The claimant and the insurance company have, therefore, an adversarial relationship.

of whether Defendants' conduct was reasonable or unreasonable and/or in good faith or bad faith. It cannot be seriously disputed, however, that such evidence is directed at the "merits" of the Plaintiffs' claims more than to satisfying the requirements of a Rule 23 class certification motion. Since the defendants would ultimately be required to reveal this information during merits discovery, the court held, as an expedient, that the information should not be specifically redacted prior to the sample file production during class certification discovery.

The universe of claims, however, has undergone a fundamental character shift as a result of the SJ Order. As currently structured, the putative class claims are highly likely to consist primarily of open, active claims, most of which are currently being litigated. Given the fundamental difference in the make up of the claims, the pragmatism of allowing the Plaintiffs to obtain what is essentially merits discovery at this early stage is now outweighed by the substantial prejudice that may enure to the Defendants by revealing an adjuster's valuation of a claim in active cases which may not ultimately be part of a class action lawsuit. The court now finds and orders that for each file produced as part of the sample authorized by this Order, evidence of reserves and settlement authority, or other "values" applied to the claim in monetary terms, shall be redacted prior to production. For any and all redactions made pursuant to this Order, a privilege log shall be prepared and produced. Of course, this issue can and should be re-visited should the Plaintiffs emerge victorious from the class certification fray.

Consistent with and unchanged from the Claims File Order, the court finds that Plaintiffs have made no showing sufficient to overcome claims of work product or attorney/client privilege and such information may be redacted in the claims, medical and legal files produced in

12

accordance with this Order.  Information redacted on the basis of privilege should be reflected on

a privilege log consistent with previous orders and the Protective Order entered in this case.

The court finds that the appropriate date range for inclusion in the universe of claims

from which the sample files will be culled is May 4, 2006 through May 4, 2011.

It is therefore **ORDERED**

1.      "Defendants' Motion for Clarification/Reconsideration of Court's March 27

Order and Request for Expedited Consideration" [Doc. No. 151] is GRANTED to the extent

consistent with this Order.  Defendants shall produce to Plaintiffs the claim, medical and legal

files associated with the fifty claim sample **on or before July 27, 2012.**  All provisions of the

March 27, 2012 Order [Doc. No. 147] not specifically addressed or modified herein remain

valid, and

2.      The stay previously imposed by the Stay Order [Doc. No. 166] is hereby

**LIFTED**; and

3.      "Plaintiffs' Motion for Extension of Time/Clarification Regarding Dates for

Discovery Cut off and Class Certification" [Doc. No. 175] is GRANTED in part as follows:

> Class Discovery Deadline: 9/21/2012
> Disclosure of Affirmative Experts with respect to Class Discovery:  8/3/2012
> Disclosure of Rebuttal Experts with respect to Class Discovery: 8/31/2012
> Deadline for Plaintiff to file a Motion for Class Certification is extended to October 5,
> 2012; and

4.      The parties shall file a Notice and Status Report with this court within five days

of any ruling regarding class certification, setting forth the parties' position with respect to future

scheduling needs; and

5.      A Scheduling/Status Conference will be held on **January 14, 2013 at 9:30 a.m.**

Dated this 26th day of June, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge