**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-01096-WJM-KMT

KATHLEEN SEABRON,
ROBERT LAYS,
CARLA LAYS, and
KRISTY LARSON,
individually, and as class representatives of behalf of all others similarly situated,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, and
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN,

      Defendants.

---

## ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

---

      Plaintiffs Kathleen Seabron, Robert Lays, Carla Lays, and Kristy Larson (collectively "Plaintiffs") bring this action on behalf of themselves and all other similarly situated against Defendants American Family Mutual Insurance Company and American Standard Insurance Company (together "Defendants"). Plaintiffs allege that Defendants have "unreasonable and undisclosed rules and conditions for evaluation of first-party UM/UIM claims" and that they use their medical services and legal units in an unreasonable manner. (Third Am. Compl. (ECF No. 47).) Plaintiffs bring the following claims: (1) violation of Colo. Rev. Stat. § 10-3-1115 (statutory bad faith); (2) breach of the duty of good faith and fair dealing (common law bad faith); and (3) violation of the

Colorado Consumer Protection Act.[1]  (*Id*. pp. 33-42.)

Before the Court is Plaintiffs' Motion for Class Certification ("Motion").  (ECF No. 213.)  For the reasons set forth below, the Motion is denied.

## I.  PROCEDURAL HISTORY

This action was originally filed in Denver County District Court.  (ECF No. 2.)  The original complaint names only Kathleen Seabron as Plaintiff and is a typical single-plaintiff bad faith case.  (*Id*.)  The case was removed by Defendants to this Court, still as a single-plaintiff bad faith case, on April 25, 2011.  (ECF No. 1.)

On May 4, 2011, an amended complaint was filed that added Robert Lays, Carla Lays, and Kristy Larson[2] as named Plaintiffs and was brought on behalf of all similarly situated plaintiffs.  (ECF No. 11.)  A Second Amended Complaint was filed on July 5, 2011.  (ECF No. 38.)  A Third Amended Complaint ("TAC") was filed on July 22, 2011.  (ECF No. 47.)  The TAC is the operative pleading in this case and alleges, in relevant part, as follows:

Plaintiffs, and the putative class, are all individuals who were insured under policies issued by Defendants for uninsured/underinsured ("UM/UIM") motorist coverage.  (TAC ¶ 9.)  Kathleen Seabron was injured in a motor vehicle accident on February 10, 2009.  (*Id*. ¶ 24.)  Her UM/UIM policy with Defendants had a limit of $100,000.  (*Id*. ¶ 26.)  She submitted her claim to Defendants and followed with a policy

---

[1]  The Court previously granted summary judgment on Plaintiffs' claim for abuse of process.  (ECF No. 165.)

[2]  Valerie Jenkins was originally named as another Plaintiff but the Court previously granted summary judgment in favor of Defendants on her claims.  (ECF No. 165.)

limits demand.  (*Id*.)  Defendants requested that Ms. Seabron secure an affidavit from

the atfault motorist before it would consider her claim.  (*Id*.)  Multiple issues regarding

this affidavit arose, which delayed the payment of benefits under her policy.  (*Id*. ¶¶ 27-

30.)  Plaintiffs allege that this amounted to an unreasonable delay of benefits.  (*Id*. ¶

30.)

On February 6, 2008, Robert and Carla Lays were involved in a motor vehicle

accident caused by an uninsured motorist.  (*Id*. ¶ 31.)  The Lays submitted claims to

Defendants on their UM/UIM policy, which Defendants refused to pay.  (*Id*. ¶ 32.)  Mr.

and Mrs. Lays then filed a lawsuit, which caused their claims files to be sent to

Defendants' "claims legal" department.  (*Id*. ¶ 33.)  The Lays then received a letter from

one of Defendants' in-house attorneys stating that the cost of any independent medical

examination ("IME") ordered by Defendants would be deducted from the policy benefits.

(*Id*. ¶ 34.)  Plaintiffs contend that this conduct constituted bad faith and was an

unreasonable delay and/or denial of benefits.  (*Id*. ¶ 35.)

Plaintiff Kristy Larson was injured in a motor vehicle collision caused by an

uninsured motorist on September 7, 2008.  (*Id*. ¶ 36.)  A year after her accident, Ms.

Larson made a demand against her UM/UIM policy for the policy limits of $25,000.  (*Id*.

¶ 38.)  In January 2010, Defendants made Ms. Larson an offer of $10,960.  (*Id.* ¶ 39.)

Ms. Larson rejected the offer but requested that Defendants tender to her the

"undisputed amount owed, $10,960".  (*Id*.)  One month later, Defendants offered Ms.

Larson $15,000.  (*Id*. ¶ 40.)  Ms. Larson kept to her policy limits demand and

Defendants rescinded their offer.  (*Id*. ¶¶ 42-43.)  In early 2011, Defendants confirmed

that Ms. Larson's file had been sent to "medical services" and that Defendants had concluded that Ms. Larson's treatment was excessive.  (*Id*. ¶¶ 42-44.)  Plaintiffs claim that Defendants' actions towards Ms. Larson constituted bad faith and were an unreasonable delay/denial of benefits owed to her.  (*Id*. ¶ 45.)

In addition to the claims asserted by the individual Plaintiffs, the TAC contains the following "Class Action Allegations":

98.  Plaintiffs bring this action as a Class Action pursuant to Rule 23(b)(2)[3] and 23(b)(3) on behalf of the following Class:

All residents of Colorado who, within the period of the applicable statute of limitations, (a) were or are insured by Defendants under automobile liability policies or motor vehicle liability policies containing uninsured motorist and/or underinsured motorist coverage; (b) have made claims to Defendants for personal injuries under their uninsured/ underinsured motorist coverage; and (c) have had their claims submitted to Defendants' Medical Services department and/or whose claims were handled by Defendants' Legal Services department.

Excluded from the Class are (1) any person who submitted a claim to Defendants for personal injuries under his or her uninsured/underinsured motorist coverage which was the subject of any lawsuit or arbitration demand filed by said person during the Class Period and in which a final judgment or award was entered; and (2) all present officers, directors, employees and agents of Defendants.[4]

99.  Upon information and belief, the Class comprises thousands of

---

[3] Plaintiffs appear to have abandoned any claims under Rule 23(b)(2) as this section is not addressed in the briefing on the instant Motion.

[4] Plaintiffs' briefing on the instant Motion had a different proposed class definition which did not limit the class to only those claims which had been referred to legal or medical services. (ECF No. 213 at 21.)  However, at the beginning of the first day of the evidentiary hearing, Plaintiffs' counsel clarified that the class definition they were moving forward with was that set forth in the Third Amended Complaint.  Therefore, this Order analyzes the propriety of the class definition contained in the Third Amended Complaint.

individuals dispersed geographically throughout the state of Colorado.

100.   American Family has revealed in other litigation that, from 2007 - 2009, it has received approximately 615 UM/UIM claims per year.

101.   The members of the Class are so numerous that the individual joinder of all members is impracticable. Furthermore, filing individual actions for each Member would result in the inefficient use of judicial resources, would needlessly delay meritorious cases, and would create a substantial risk of inconsistent results. The size of the class will not pose problems from a judicial management standpoint.

102.   Common questions of law and fact exist as to the claims of all Class Members, and these common issues predominate over any questions solely affecting individual members. The common issues of law and fact include, but are not limited to:

   a.   Have the Defendants intentionally and recklessly unreasonably adopted and implemented the scheme described herein;

   b.   Whether the purpose of the scheme described herein is to provide a basis for Defendants' claims adjusters to intentionally and recklessly unreasonably make settlement offers that are substantially lower than what would have been justified by the medical information and records submitted by the claimant, or which would have been submitted by the claimant if additional information had been requested.

   c.   Whether the purpose of the scheme described herein is to force insureds to capitulate to a low-ball settlement offer or commence litigation, which Defendants know is expensive and stressful, and which invariably intentionally and recklessly unreasonably delays its payment of benefits to insureds like the Plaintiffs, notwithstanding Defendants' knowledge that they owe such benefits to insureds like the Plaintiffs, and to intentionally and recklessly unreasonably send a message to their insureds to either accept a lower (and unreasonable) claim payment, or be punished by protracted and expensive litigation.

   d.   Whether the purpose of the scheme described herein is to

intentionally and recklessly unreasonably delay claim payments for the purpose of allowing Defendants to maximize their return on money being withheld and/or to coerce insureds into a more favorable settlement;

e.   Whether the procedures and methods employed by Defendants' review nurses, as described herein, intentionally and recklessly unreasonably violate C.R.S. § 12-36-106;

f.   Whether the releases Defendants secured and/or secure as a condition to  UM/UIM claim payment are intentionally and recklessly unreasonable, against public policy and/or void/invalid;

g.   Whether the procedures and methods employed by Defendants and Defendants' claims adjusters and Medical and Legal Services personnel, as described herein, are intentionally and recklessly unreasonable and in willful violation of C.R.S. § 10-3-1104[]

. . .

m.   Whether to procedures and methods employed by Defendants and Defendants' claims adjusters and Medical and Legal Services personnel, as described herein, are intentionally and recklessly unreasonable and in willful violation of C.R.S. §10-3-1115;

n.   Whether the procedures and methods employed by Defendants and Defendants' claims adjusters and Medical and Legal Services personnel, as described herein, constitute breaches of Defendants' contracts with the Class Members;

o.   Whether Defendants' scheme and the procedures and methods employed by Defendants to effectuate the scheme, as described herein, constitute a breach of Defendants' duty of good faith and fair dealing with the Class Members;

p.   Whether the concealment of Defendants' scheme, as described herein, violates the Colorado Consumer Protection Act;

q.   Whether Plaintiffs and the Class Members are entitled to declaratory relief in the form of a declaratory judgment that

Defendants' scheme as described herein, is a violation of Defendants' contracts of insurance; a breach of the duty of good faith and fair dealing; a violation of the Colorado Unfair Competition - Deceptive Practices Act; a violation of the Colorado Consumer Protection Act; a violation of C.R.S. § 10-3-1115; and an abuse of process;

r.      Whether declaratory relief should be granted in the form of a declaratory judgment that Class Members' settlements and releases are void, voidable and/or are subject to rescission;

s.      Whether Plaintiffs and the Class Members are entitled to injunctive relief to enjoin Defendants from continuing to employ the scheme described herein;

t.      Whether Defendants should be required to disgorge the profits made through the use of their unlawful scheme and/or pay damages to the Plaintiffs and Class Members;

103.    The Plaintiffs are members of the Class. The claims of the Plaintiffs, individually and/or collectively, are typical of the claims of the Class, as all of the claims have a common basis and originate from the same unlawful and improper scheme, and from the same unlawful and improper procedures and methods employed by Defendants and their employees to implement and carry out said scheme.  Additionally, Plaintiffs and the Class Members have been adversely impacted by Defendants' scheme, and the improper procedures and methods employed by Defendants and their employees to implement and carry out said scheme.

104.    If the claims of each Class Member were brought and prosecuted individually, they would necessarily require proof of the same material and substantive facts; rely upon the same legal theories; and seek the same type of relief.

105.    The Plaintiffs will fairly and adequately protect the interests of the Class Members because their interests do not conflict with the interests of the Class Members they seek to represent. The Plaintiffs intend to prosecute this action vigorously on behalf of themselves and the Class Members whom they represent.

106.    The Plaintiffs have retained counsel who are competent and experienced in class action litigation and have adequate resources to prosecute this action.

107.   Plaintiffs' counsel will fairly and adequately protect the interests of the Class Members.

108.   Defendants have acted on grounds that apply generally to the class, so that the final declaratory, injunctive relief, and the other equitable and legal relief sought herein is appropriate respecting the class as a whole.

109.   A class action is superior to other available methods for fairly and efficiently adjudicating the controversy for the following reasons:

   a.   The joinder of thousands of individual Class Members is impracticable and would cause insurmountable management problems;

   b.   There is no special interest of Class Members in individually controlling the prosecution of separation actions;

   c.   For a large number of the Class Members, their claims may be relatively modest compared to the expense of litigating said claims;

   d.   A Class Action will assure uniformity of decisions among Class Members;

   e.   The declaratory and injunctive relief, and other equitable relief sought herein will affect the Class Members as a whole;

   f.   The resolution of this controversy through a class action presents fewer management difficulties than individually filed lawsuits and conserves the resources of the parties and the judicial system, while protecting the rights of each Class Member.

(ECF No. 47 at 26-33.)

At the time of the initial Scheduling Order, the parties agreed that discovery should be bifurcated with class discovery and issues relevant to Federal Rule of Civil Procedure 23(a) and (b) proceeding first.  (ECF No. 44 at 14.)  Therefore, U.S. Magistrate Judge Kathleen M. Tafoya set deadlines for class discovery and a deadline

for filing a motion to certify.  (*Id*. at 20-21.)  All remaining discovery and motions deadlines "will be established after a ruling on the motion for class certification."  (*Id*. at 21.)

One of the many vigorously contested issues during class discovery was the number of claims files from the putative class, and what portions of such claims files, Defendants would be required to produce.  Plaintiffs served a request for production seeking "all documents related to the claims of the named plaintiffs as well as all putative class members, segregated generally as the 'claim file' and the 'legal file' for such persons."  (ECF No. 61.)  Defendants produced the files for the named Plaintiffs but refused to produce the remainder of putative class's files, and instead argued in favor of producing a statistically significant sample of such files.  (ECF No. 75.)

In response to Plaintiffs' Motion to Compel, Magistrate Judge Tafoya held that Plaintiffs were only entitled to a sampling of files from the putative class as defined in the TAC and ordered Defendants to produce 50 claims files—which was about 20% of the putative class.  (ECF No. 181 at 6.)  Judge Tafoya found that "a sample of fifty claims within the narrowed group of potential class members will be adequate to allow Plaintiffs the opportunity to prepare for their class certification arguments while not significantly overburdening the Defendants' preparation of the discovery at this stage."  (*Id*. at 10.)  Defendants produced the 50 randomly selected claims files in accordance with this Order.

After class discovery closed, Plaintiffs filed the instant Motion for Class Certification on November 9, 2012.  (ECF No. 213.)  Defendants filed their response to the Motion on December 21, 2012.  (ECF No. 243.)  Plaintiffs' reply was filed on

January 25, 2013.  (ECF No. 266.)  At Defendants' request the Court scheduled a two-day evidentiary hearing for June 5-6, 2013.  (ECF No. 262.)

At the evidentiary hearing, Plaintiffs called the following individuals as witnesses: (1) Robert Lays, one of the named Plaintiffs; (2) Laurie Loman, a nurse employed by Defendants; (3) Raymond Daye, a former claims adjuster employed by Defendants; (4) Kathleen Seabron, one of the named Plaintiffs; (5) Bradley Levin, an attorney retained by Plaintiffs as an expert on insurance claims handling and standards; (6) Kristy Larson, one of the named Plaintiffs; and (7) Lorraine Berns, an expert retained by Plaintiffs on insurance claims handling practices.  Defendants called the following witnesses: (1) Pamela Alsup, a regional claims administrator employed by Defendants; and (2) Carla Lays, one of the named Plaintiffs.  To the extent the witnesses' testimony is relevant to the Court's analysis, it will be discussed in greater detail below.

## II.  ANALYSIS

The party seeking to certify a class bears the strict burden of proving the requirements of Rule 23.  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.  *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982).  When deciding whether the proposed class meets the requirements of Rule 23, the trial court accepts the plaintiffs' substantive allegations as true, though it need not blindly rely on conclusory allegations and may consider the legal and factual issues which the complaint presents.  *Shook v. El Paso Cty.*, 386 F.3d 963, 968 (10th

Cir. 2004); *see also Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009).  The

Court should not pass judgment on the merits of the case, but must conduct a "rigorous

analysis" to ensure that the requirements of Rule 23 are met.  *D.G. ex rel. Stricklin v.*

*Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).  The decision whether to grant or

deny class certification "involves intensely practical considerations and therefore

belongs within the discretion of the trial court." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227

(10th Cir. 2013).

As the party seeking class certification, Plaintiffs must demonstrate that all four

prerequisites of Fed. R. Civ. P. 23(a) are clearly met, as well as showing that this case

falls into one of the three categories set forth in Rule 23(b).  *Shook*, 386 F.3d at 971;

*see also Tabor*, 703 F.3d at 1227.  The Rule 23(a) elements are: (1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or

fact common to the class; (3) the claims or defenses of the representative party are

typical of the claims or defenses of the class; and (4) the representative parties will

fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

Although the Court has significant reservations about whether Plaintiffs have met

their burden with respect to a number of the Rule 23(a) prerequisites—particularly

commonality and typicality—in the interest of judicial economy[5], the Court will assume

_____

[5]   The Court notes that Rule 23(b)(3)'s predominance and superiority requirements
consider many of the same facts and factors needed to satisfy Rule 23(a)(2)'s commonality and
Rule 23(a)(3)'s typicality requirement.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,
623-24 (1997).  Because Rule 23(b)(3)'s predominance requirement is "far more demanding"
than Rule 23(a)(2)'s commonality requirement, the Court finds it more expedient to focus the
analysis on the Rule 23(b)(3) requirements.  *Id.*; *Emig v. Am. Tobacco Co., Inc.*, 184 F.R.D.
379, 385 (D. Kan. 1998) (declining to address Rule 23(a)(2)'s commonality requirement
because it was "subsumed under, or superceded by, the more stringent Rule 23(b)(3)'s

that the Rule 23(a) factors have been satisfied by the Plaintiffs and focus its analysis on

Rule 23(b).  Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires

that "questions of law or fact common to the members of the class predominate over

any questions affecting individual members" and that the class action "is superior to

other available methods for the fair and efficient adjudication of the controversy."  The

Court will discuss predominance and superiority in turn below.

      1.   <u>Whether Common Issues Predominate Over Individualized Questions</u>

      To certify a class under Rule 23(b)(3), the Court must first find that facts

common to the class predominate over any questions affecting individual members.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v.

Windsor*, 521 U.S. 591, 615 (1997).  "[W]hen one or more of the central issues in the

action are common to the class and can be said to predominate, the action will be

considered proper under Rule 23(b)(3) even though other important matters have to be

tried separately."  *Cook v. Rockwell Intern. Corp.*, 151 F.R.D. 378, 388 (D. Colo. 1993).

      The nature of the evidence that will suffice to resolve a question determines

whether the question is common or individual. *See In re Visa Check/MasterMoney

Antitrust Litig.*, 280 F.3d 124, 136-40 (2d Cir. 2001).  If, to make a *prima facie* showing

on a given question, the members of a proposed class will need to present evidence

---

requirement"); 7A Wright, Miller & Kane, Federal Practice and Procedure § 1763 at p. 227 (3d
ed. 2013) (noting that Rule 23(a)(2) "may be a superfluous provision, or at least partially
redundant, since the existence of common questions can be viewed as an essential ingredient
of a finding that the case falls within one of the three categories of class actions described in
subdivision (b).").

that varies from member to member, then it is an individual question.  *Id*.  If the same evidence will suffice for each member to make a *prima facie* showing, then it becomes a common question.  *Id*.

To succeed on their common law bad faith and/or statutory bad faith claims at trial, Plaintiffs have to show that Defendants acted unreasonably in the manner in which they processed Plaintiffs' claims or by delaying or denying the claim for benefits. *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 415 (Colo. 2004) (common law bad faith claim depends on reasonableness of insurer's actions); *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012) ("[T]he only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis.").  Thus, the reasonableness of Defendants' action is at the heart of these claims.

Plaintiffs argue that the "same questions of fact and law underlie Defendants['] liability to all class members.  In the simplest terms, the answers to the following common questions will answer liability for the entire class: 'whether Colorado State Law required standards for review be in place for insurance companies' review of first party cases,' and 'whether Defendants had any legal uniform standards in Colorado.'" (ECF No. 213 at 27.)

The Court agrees that whether Colorado law required Defendants to have uniform standards for claims handling, and whether Defendants had such standards, are factual questions that are common to the entire putative class.  The Court also agrees that the lack of uniform standards for claims handling is a fact which supports Plaintiffs' bad faith claims, because it arguably violates Colorado's Unfair Claims

Settlement Practices Act.  *See* Colo. Rev. Stat. § 10-3-1104(h)(iii) ("[F]ailing to adopt

and implement reasonable standards for the prompt investigation of claims arising

under insurance policies" is an "unfair claim settlement practice".)

However, Plaintiffs' argument does not show that common questions

predominate over individual questions because Plaintiffs cannot establish their bad faith

claims by relying solely on Defendants' lack of uniform claims processing standards.

*See Am. Family v. Allen*, 102 P.3d 333, 344 (Colo. 2004) (Unfair Claims Practices Act

regulates the conduct of the insurance industry and may be used as "valid, but not

conclusive, evidence of industry standards.").  While the lack of uniform standards is

evidence that the jury can consider in deciding whether Defendants acted in bad faith,

they must also consider the individual facts and circumstances of each claim to answer

the ultimate question of whether Defendants' actions in a particular case were

reasonable.  *Id*.

Accordingly, to show that the common questions of fact and law predominate

over individualized questions, Plaintiffs must show that the overall handling of Plaintiffs'

claims was similar.  For precisely this reason, Judge Tafoya ordered Defendants to

produce fifty randomly selected claims files from the putative class (hereafter the "Class

Files").  (ECF No. 181 at 10.)  Despite having the Class Files readily available well

before the end of the class discovery cut-off, Plaintiffs failed to offer any evidence

summarizing the common aspects of these files.  This failure is telling and supports

Defendants' contention that the fifty randomly-selected claims files show significant

dissimilarities.

Having reviewed the evidence, the Court finds that there is little commonality

between the fifty randomly-selected files.  For example, Plaintiffs contend that Defendants had a "secret rule" of referring all personal injury claims to medical services and using eBill to re-price claims before tendering an offer.  (ECF No. 213 at 4.)  However, only thirty-one of the Class Files were referred to Medical Services and, of those thirty-one, eBill was used to evaluate only twenty-five files, with the results of eBill used for negotiation in only eighteen files.  (ECF No. 243-6.)

Plaintiffs also contend that Defendants frequently invalidated a physician's impairment ratings.  (ECF No. 213 at 4-5.)  However, impairment ratings were only mentioned in four of the Class Files.  (ECF No. 243-7 ¶ 10.)  In short, there is little commonality in the factual circumstances underpinning the handling of the fifty randomly-selected Class Files.

At the evidentiary hearing, rather than focus on the Class Files, Plaintiffs attempted to show common issues through their testimony.  However, the Court finds that their testimony actually highlighted the differences between the named Plaintiffs' claims and showed that there was little overlap indeed in the manner in which their claims were handled by Defendants.  The following is an illustration:

- Ms. Larson's claim was referred to Medical Services.  Ms. Seabron's and Mr. and Mrs. Lays' files were not.

- Ms. Seabron was asked to secure a "no other insurance" letter from the underinsured driver.  No other named Plaintiffs were required to do this.

- Mr. and Mrs. Lays were told that the cost of their IMEs would come out of Defendants' settlement offer to them.  This statement was not made to the other named Plaintiffs.

- Before this case was commenced, Mr. and Mrs. Lays' files had been referred to legal services.  Ms. Seabron and Ms. Larson's claims were not referred until after this action was commenced.

- Defendants utilized eBill on a portion of Ms. Seabron's claim but did not use it on any of the other named Plaintiffs' claims.

Thus, the Court finds that few are the factual issues which are common between and among the named Plaintiffs' claims.  Having failed to show significant common issues in either the Class Files or amongst the named Plaintiffs' files, the Court finds that Plaintiffs have failed to meet this aspect of their burden under Rule 23(b)(3).

Additionally, the Court finds that individual questions predominate over common questions with regard to the damages analysis for each putative class member.  The damages for common law bad faith[6] include both economic and non-economic, as well as punitive damages in the appropriate case.  *See Goodson*, 89 P.3d at 415.  Given the various coverage limitations applicable to different class members, the economic damages amounts are likely to vary.  Moreover, the non-economic damages assessment would be highly individualized.  Plaintiffs have failed to set forth any model for calculating damages on a class-wide basis.  Such failure is further reason for this Court to deny Plaintiffs' class certification motion.  *See Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013) (plaintiffs must show a method of computing class-wide

---

[6]  At the hearing, Plaintiffs stated on the record that they wished to dismiss the common law bad faith claim due to problem proving class-wide damages.  At the conclusion of the hearing, the Court set a deadline for Plaintiffs to file a motion to dismiss or a stipulation of dismissal with regard to the common law claim.  No such motion or stipulation has, to date, been filed.  Therefore, Plaintiffs common law bad faith claim remains pending in this case.

damages at the certification stage).

With respect to the statutory bad faith claim, a jury's finding in the Plaintiffs' favor would permit them to recover "two times the covered benefit". Colo. Rev. Stat. § 10-3-1116(1). The "covered benefit" in each class member's case could vary widely. Some class members have different policy limits, and others may not have had a claim that reached the policy limit. Because there are no non-economic damages at issue in the statutory bad faith claim, calculation of damages on a class-wide basis may be simpler. However, the individualized questions for each class member would still be significant, which is further reason to deny Plaintiffs' certification motion. *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, – F.3d –, 2013 WL 3389469 (10th Cir. July 9, 2013) ("[P]redominance may be destroyed if individualized issues [with regard to damages] will overwhelm those questions common to the class."); *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir.2010) ("To be sure, individualized damage determinations cut against class certification under Rule 23(b)(3)."); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) ("[W]hile the fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification . . . it is nonetheless a factor we must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues." (citations omitted)).

By its nature, any inquiry into an insurer's reasonableness inquiry is fact-specific. Whether an insurer acted reasonably is judged by the entire course of conduct between

the parties and the finder of fact must take into account all information known by the insurer at the time a decision is made. *Dale v. Guaranty Nat. Ins. Co.*, 948 P.2d 545, 552-53 (Colo. 1997).  In most cases the highly individualized nature of the inquiry into whether an insurer acted reasonable in a particular case makes bad faith claims inappropriate for class determination.  *See Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011) (the requirement that each plaintiff must show that the insurer acted unreasonably in adjudicating his claim "bars class certification because it cannot be established on a class-wide basis.").

The only cases cited by Plaintiffs in which courts have certified class actions involving the denial of benefits under an insurance policy are easily distinguishable from the facts presented here.  In *Doiron v. Conseco Health Ins. Co.*, 279 F. App'x 313 (5th Cir. 2008), the court certified a class action in a bad faith insurance dispute.  In that case, the insurer denied coverage for a particular aspect of a certain chemotherapy treatment.  *Id*. at 315.  The certified class involved every policy holder that had been denied coverage for that particular treatment.  *Id*.  Lousiana law, which governed the dispute, made it *per se* bad faith to fail to pay a covered claim within thirty days.  *Id*. at 317.  In those circumstances, the court held that the class members' bad faith claims did "not create an obstacle to class certification."  *Id*.

Similarly, in *Churchill v. Cigna Corp.*, 2011 WL 3563489 (E.D. Pa. August 12, 2011), the court certified a class action in a case involving the denial of coverage for a particular type of autism treatment.  *Id*. at *1.  The court noted that the insurer denied coverage for all of the class members for the same reason, its finding that the treatment

was "investigative or experimental". *Id*. at *6.  Because this single reason was common to the entire class, a jury's finding that the treatment was not investigative or experimental would entitle the entire class to judgment in their favor. *Id*. at *6.  In these limited circumstances, the court found that certification was appropriate.

In this case, Plaintiffs repeatedly argue that Defendants had "uniform policies" which resulted in the unreasonable denial of benefits to the putative class members. (ECF No. 266 at 13-14.)  However, Plaintiffs failed to identify any "uniform policies" that applied even to the fifty randomly-selected Class Files from the putative class members.  Testimony from the named Plaintiffs showed that there were few, if any, policies that were applied uniformly to their individual claims.  It appears that claims decisions were made based on a different set of facts for each of the individual Plaintiffs and the putative class members.  On the record currently before it, the Court finds that the individual questions necessary to determine whether Defendants acted reasonably in handling each claim predominate over the common questions and, therefore, class certification is inappropriate.

2.    <u>Superiority of Class Action over Separate Actions</u>

The second requirement for class certification under Rule 23(b)(3) is that the class action be "superior to other available methods fairly and efficiently adjudicating the controversy."  In determining whether to certify a class under Rule 23(b)(3), the Court considers:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

The first factor is intended, at least in part, to address the degree of control an individual plaintiff may want to have over their particular claim. One of the purposes behind Rule 23(b)(3) is to permit a class action in cases in which there would be insufficient incentive to bring claims on an individual basis. *See* Fed. R. Civ. P. 23, Advisory Committee Notes. "While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. In cases involving a small recovery or a statutorily mandated uniform recovery for each class member, an individual plaintiff may not desire significant control over their claim. However, in cases involving larger sums of money or personalized injuries, each plaintiff may have a greater interest in personal involvement. *See Emig v. Am. Tobacco Co., Inc.*, 184 F.R.D. 379, 392 (D. Kan. 1998).

In this case, Section 1116(1) allows an insured to recover "two times the covered benefit", plus attorneys' fees. Colo. Rev. Stat. § 10-3-1116. Commonly, a UM/UIM policy may have a limit of $100,000. Two times this policy limit, plus any non-economic damages on the common law bad faith claim, could result in a significant recovery for a class member. Where the amount of damages available to each class member is high, each individual has a substantial interest in proceeding independently and thereby

controlling the prosecution of his case.  *See Amchem*, 521 U.S. at 616-17.  This cuts against a finding of superiority of proceeding as a class action to adjudicate the instant disputes.  *See Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 531 (D. Md. 2001).

Furthermore, it appears entirely feasible for Plaintiffs to bring their claims individually.  Plaintiffs' argument concerning the prohibitive cost and attorney hours associated with bringing individual suits is wholly undermined by the fact that Section 1116 awards attorney fees and costs to a successful litigant.  *See* Colo. Rev. Stat. § 10-3-1116(1) (stating that an insured whose claim is unreasonably delayed or denied may recover "reasonable attorney fees and court costs and two times the covered benefit."); *Hall v. Am. Standard Ins. Co.*, 292 P.3d 1196, 1200 (Colo. App. 2012) (attorneys' fees are permissible damages in a statutory bad faith claim).  The Court regularly sees bad faith claims filed by individual policy holders.  In fact, at the time this Order was issued, there were more than twenty active bad faith cases brought by individual plaintiffs pending in this District.  Thus, the Court finds that class certification is not necessary to protect the putative class's ability to bring their claims and that this factor weighs against granting the Motion.

The second factor set forth above—the extent and nature of any litigation concerning the controversy already begun by or against class members—is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits.  *See* 7A Charles Alan Wright et al., Federal Practice & Procedure § 1780, at 568-69 (2d ed. 1986).  A class action may be appropriate if there is a clear threat of

multiplicity and a risk of inconsistent adjudications.  *Id.*  In this case, multiple lawsuits

may be filed if class certification is denied.  However, given the dissimilarities in the

manner in which Defendants handled each Plaintiffs' claim, the Court cannot say with

any degree of certainty that there is a threat of multiplicity or inconsistent verdicts as the

various juries hearing the multiple cases would not be adjudicating the same facts.

Even assuming that some plaintiffs would prevail on their bad faith claims while others

would not, these results would not be inconsistent because the reasonableness inquiry

is so fact-specific.  Thus, the Court finds that the second factor weighs against class

certification.

The third factor concerns whether the forum chosen for the class action

represents an appropriate place to settle the controversy, given the location of the

interested parties, the availability of witnesses and evidence, and the condition of the

court's calendar. This forum is an appropriate place for this case as all of the putative

class members have policies covered by Colorado insurance regulations.  All of the

named Plaintiffs suffered their injuries in Colorado and there is a substantial likelihood

that the same is true for the putative class.  Thus, this factor weighs in favor of granting

class certification.

The fourth factor requires an evaluation of the management difficulties likely to

be encountered if the action is continued as a class suit.  The manageability factor

encompasses the "whole range of practical problems that may render the class action

format inappropriate for a particular suit."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

164 (1974).  When individual rather than common issues predominate, the economy

and efficiency of class action treatment are lost.  *See, e.g.*, Wright & Miller, supra, §

1778; *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.19 (5th Cir. 1996) ("The greater the number of individual issues, the less likely superiority can be established."). Given the predominance of individual issues over common issues discussed above, the Court finds that a class action is not superior to other forms of action to resolve these issues. Thus, the fourth factor weighs against class certification.

Having considered all of the factors set forth in Rule 23(b)(3), the Court finds that Plaintiffs have failed to show that a class action is superior to other available methods fairly and efficiently adjudicating the controversy. As set forth above, the Court also finds that Plaintiffs have failed to show that common issues of law and fact predominate over individual issues. Having failed to meet their Rule 23(b)(3) burdens, Plaintiffs' Motion for Class Certification must be denied.

### III.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Class Certification (ECF No. 213) is DENIED.

Dated this 16th day of July, 2013.

BY THE COURT:

William J. Martínez
United States District Judge

-23-